UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BHOLA A.,

                                        Plaintiff,

                    v.

KILOLO KIJAKAZI,[1] Commissioner of
   Social Security,

                                        Defendant.
_____

|  |  |
|---|---|
| | **DECISION**<br>**and**<br>**ORDER** |
| | **22-CV-364F**<br>(**consent**) |

APPEARANCES:          PUSATIER, SHERMAN, ABBOTT & SUGARMAN
                              Attorneys for Plaintiff
                              STEPHEN F. PUSATIER, of Counsel
                              2464 Elmwood Avenue
                              Kenmore, New York  14217

                              TRINI E. ROSS
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York  14202
                                        and
                              AVNI DINESH GANDHI
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              6401 Security Boulevard
                              Baltimore, Maryland  21235

## JURISDICTION

On April 6, 2023, the parties to this action consented pursuant to 28 U.S.C.

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

§ 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 12).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on December 8, 2022 (Dkt. 7), and by Defendant on February 24, 2023 (Dkt. 11).

## BACKGROUND

Plaintiff Bhola A. ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on June 14, 2018, for Social Security Disability Insurance under Title II of the Act ("SSDI" or "disability benefits").  Plaintiff alleges he became disabled on January 3, 2018, based on lower back fracture, headaches, neck pain, and numbness and tingling in his left arm.  AR[2] at 233, 237.  Plaintiff's application initially was denied on August 28, 2018.  AR at 107-12.

On October 9, 2018, Plaintiff timely filed a request for an administrative hearing, AR at 115-16, and on May 4, 2021, the hearing was held via telephone conference before Administrative Law Judge ("ALJ") Paul W. Goodale ("the ALJ"), located in Providence, Rhode Island ("administrative hearing").  AR at 32-72.  Appearing at the hearing in Buffalo, New York was Plaintiff, represented by legal counsel Stephen Pusatier, Esq.  Also appearing and testifying at the administrative hearing was an impartial vocational expert Susan Sheehan ("the VE").

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on August 15, 2022 (Dkt. 4).

On July 26, 2021, the ALJ issued a decision denying Plaintiff's claim, AR at 13-31 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council ("administrative appeal").  AR at 195-97.  On April 1, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's Decision that Plaintiff was not disabled, AR at 1-7 ("Appeals Council's Decision"), thus rendering the ALJ's Decision the Commissioner's final decision.  In connection with the administrative appeal, Plaintiff provided medical evidence which was not considered by the Appeals Council because it did not relate to the period at issue.  On May 17, 2022, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On December 8, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 7 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 7-1) ("Plaintiff's Memorandum").  On February 24, 2023, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching the Commissioner's Memorandum in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief, Pursuant to Local Rule 5.5 (Dkt. 11-1) ("Defendant's Memorandum").  Neither Plaintiff nor Defendant filed any reply.  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Bhola A. ("Plaintiff"), born in Bhutan on April 13, 1980, was 37 years old as of his alleged DOD of January 3, 2018, and 41 years old as of July 26, 2021, the date of the ALJ's Decision.  AR at 25, 26, 40, 233.  Plaintiff is married, has no children, and lives with his wife in an apartment on the fourth floor of a building with no elevator.  AR at 40-41, 247.  In 1998, prior to immigrating to the United States in 2010, Plaintiff graduated high school in Bhutan where he was in regular classes, but has not completed any specialized training, trade, or vocational school.  AR at 42-43, 238.  Plaintiff is fluent and can read and write in Nepali, Plaintiff's native tongue, but has difficulty speaking English which he also cannot read or write.  AR at 43-44.  Plaintiff is also able to do math, handle money, and pay bills.  AR at 251.  Plaintiff can manage his own personal care but takes baths instead of showers.  AR at 55, 255.

Plaintiff goes outside and for transportation either walks, takes public transportation, or rides in a vehicle.  AR at 250.  Plaintiff has a driver's license, and can drive, but drives only when necessary because Plaintiff is concerned about vertigo, and Plaintiff usually relies on his wife to drive.  AR at 44, 56, 58, 250.  Plaintiff shops for food and clothing in stores once a week, AR at 250, and reports his hobbies, interests, and social activities include watching television, walking in the park, eating, and shopping.  AR at 251.

Plaintiff's past relevant work ("PRW") was as a machine operator and packager for a medical supply factory, hand packager in a factory, and a laborer in stores.  AR at

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

48-50, 62-63, 238.  Plaintiff left his last job as a machine operator and packager because of his condition.  AR at 237.

It is undisputed that prior to January 3, 2018, Plaintiff had no significant health issues, but now suffers from multiple physical impairments including disorders of the cervical and lumbar spines, a major joint disorder (left shoulder), migraine headaches, and carpal tunnel syndrome.  AR at 19.  Plaintiff attributes his impairments to injuries sustained in a motor vehicle accident on January 3, 2018 (the "accident" or "MVA"), including four herniated discs of the cervical spine and one herniated disc in his lumbar spine, and internal derangement of the left shoulder.  AR at 50-52, 331-32, 334, 386. On January 8, 2018, Plaintiff commenced chiropractic treatment for his back injuries at Erie County Chiropractic where he saw Scott A. Croce, D.C. ("Dr. Croce"), regularly until June 29, 2018.  AR at 349-54, 435-526.

On February 15, 2018, Plaintiff commenced treatment for his low back pain, cervical pain, and left arm and shoulder pain at Pinnacle Orthopedic & Spine Specialists ("Pinnacle"), where Plaintiff saw orthopedic surgeons Zair Fishkin, M.D. ("Dr. Fishkin"), and A. Marc Tetro, M.D. ("Dr. Tetro").  AR at 381-414, 527-44, 548-50, 553-62, 572-636.  On September 11, 2018, Dr. Fishkin performed lumbar fusion surgery, but despite the surgery, Plaintiff continued to complain of low back pain and left shoulder numbness and tingling, and on July 18, 2019, Dr. Fishkin concluded Plaintiff had "failed back syndrome" for which long-term pain management was recommended but no further surgery.  AR at 573-84.  On March 5, 2018, Dr. Tetro suspected mild carpal tunnel syndrome and superimposed cervical radiculopathy from the cervical disc herniations. Plaintiff's left arm symptoms did not improve with conservative treatment and on July 9,

2018, Plaintiff underwent carpal tunnel release surgery performed by Dr. Tetro. AR at 542-44. Plaintiff also obtained treatment for cervical neck pain and headaches at Dent Neurologic Institute ("Dent"), where Plaintiff saw Lixin Zhang, M.D. ("Dr. Zhang"). AR at 309-20, 563-71, 655-60). Plaintiff was treated by Gary G. Wang, M.D. ("Dr. Wang") for pain management. AR at 810-18. Plaintiff receives primary care at Neighborhood Health Center in Buffalo, New York, where he has been treated by John Kucera, M.D. ("Dr. Kucera"), and nurse practitioner ("NP") Lydia Lutkoff ("NP Lutkoff"). AR at 315-34, 640-43, 661-777. Plaintiff was also treated for his diabetes at UBMD Physicians Group where he saw Robert Borowski, M.D. ("Dr. Borowski"). AR at 644-54, 788-809.

In connection with his disability benefits application, on August 9, 2018, State Agency review physician J. Lawrence, M.D. ("Dr. Lawrence"), reviewed Plaintiff's medical records. AR at 98-106, 545-47. Dr. Lawrence diagnosed Plaintiff with spine disorders, dysfunction of major joints, migraines, and carpal tunnel syndrome, but determined Plaintiff's impairments were only partially consistent with the pain and weakness Plaintiff reported, and Dr. Lawrence assessed Plaintiff with a residual functional capacity ("RFC") for "light" work as defined by the relevant regulations.

## DISCUSSION

### 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.[5]  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's RFC which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations

---

[5] Plaintiff seeks disability benefits under only SSDI.

posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

Further, it is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC.  20 C.F.R. §§ 404.1546(c), 404.1527(d)(2), 416.946(c), and 416.927(d)(2).  In formulating an RFC, "the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'"  *Schillo v. Kijakazi*, 21 F.4th 64, 78 (2d Cir. 2022) (quoting *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013) (brackets in *Schillo*)).

3.    **Analysis of Plaintiff's Arguments**

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI through September 30, 2023, AR at 18, and that Plaintiff has not engaged in substantial gainful activity ("SGA") since January 3, 2018, the date Plaintiff alleges as his disability onset date ("DOD").  AR at 19.  The ALJ found Plaintiff suffers from the severe impairments of a cervical spine disorder, a lumbar spine disorder status-post September 2018 lumbar surgery, a major joint (left shoulder) disorder, migraine headaches, and carpal tunnel syndrome status-post July 2018 release, *id*., but that Plaintiff's Type 2 diabetes mellitus, although medically established is well controlled with medication, and vertigo was considered a side effect of medications, and that neither Plaintiff's diabetes nor vertigo posed more than a *de minimis* effect on Plaintiff's ability to perform physical or work activities and, as such, are not severe impairments, *id*. at 19-20, and that none of Plaintiff's impairments, both severe and non-severe, either individually or in combination, meet or medically equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 20.  Despite his impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 404.1576(b), with additional restrictions including that Plaintiff can never climb ladders, ropes, and scaffolds, can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, can frequently, as opposed to unlimited, reach overhead and handle bilaterally, and can perform individual table/bench work, but cannot perform assembly-line type work (*i.e.*, outwardly paced, working in close tandem with co-workers).  *Id*. at 20-25.  The ALJ further found Plaintiff is incapable of performing his PRW, all of which were of medium exertion per the VE's testimony, *id*. at 25, but that

10

based on Plaintiff's age of 37 as of his alleged DOD of January 3, 2018, which is defined as a younger individual, and given Plaintiff's RFC, high school education, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a lab sample carrier, parking lot attendant, and merchandise marker, all of light exertion for which Plaintiff's inability to fluently speak, read and write in English would not erode the number of jobs. *Id*. at 25-26. Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since January 3, 2018 through the date of the ALJ's decision. *Id*. at 24-26.

In support of his motion, Plaintiff argues the ALJ erred in assessing the medical evidence, Plaintiff's Memorandum at 11-13, and by failing to give any weight to Plaintiff's treating sources, Plaintiff's Memorandum at 13-17, the ALJ's assessment of Plaintiff's credibility and factual findings are not supported by substantial evidence in the record, *id*. at 17-19. Defendant argues the ALJ's opinion is supported by substantial evidence in the record which establishes Plaintiff retains the RFC for light work with frequent bilateral handling and reaching overhead, Defendant's Memorandum at 9-14, substantial evidence supports the ALJ's conclusion that Plaintiff's allegations are only partially consistent with the record, *id*. at 14-19, and the ALJ considered the treatment records of Drs. Fishkin and Tetro and was not required to evaluate the persuasiveness of their statements. *Id*. at 19-22. There is no merit to Plaintiff's arguments.

The ALJ's formulation of Plaintiff's RFC, including that Plaintiff can perform a limited range of light work, is supported by substantial evidence in the record. As defined by the relevant regulation:

[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).

Plaintiff argues that in finding Plaintiff has the RFC for a limited range of light work, the ALJ failed to properly assess the medical opinions in the record that Plaintiff is totally disabled, including the opinions of Dr. Fishkin and Dr. Tetro finding Plaintiff is 100% temporarily disabled and which Plaintiff maintains were entitled to some weight given Dr. Fishkin is an orthopedic spine specialist who performed Plaintiff's lumbar spine surgery, and Dr. Tetro is an orthopedic hand and shoulder specialist who performed Plaintiff's carpal tunnel release surgery, as well as treating chiropractor Dr. Croce, especially with regard to the consistency of such opinions and their long-standing treatment relationships with Plaintiff.  Plaintiff's Memorandum at 14-16. Plaintiff specifically references 20 C.F.R. § 404.1520c.

For claims filed on or after March 27, 2017,

We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[6] including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . .

20 C.F.R. § 404.1520c(a).

---

[6] "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in your current claim based on their review of the evidence in your case . . . ."  20 C.F.R. § 404.1513(a)(5).  In the instant case, no prior administrative medical finding is at issue.

In particular, when a medical source provides one or more medical opinions, the Commissioner will consider the medical opinions from that source together according to five factors including (1) supportability; (2) consistency; (3) the medical's source's relationship with the claimant; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).  When evaluating the persuasiveness of a medical opinion, the two most important factors are supportability and consistency, 20 C.F.R. § 404.1520c(a), and the ALJ must articulate he or she considered the "supportability" and "consistency" of a medical source's opinion, 20 C.F.R. § 404.1520c(b)(2), but is not required to articulate consideration of the remaining factors.[7]  *Id.*  In the instant case, there is no merit to Plaintiff's argument that the ALJ erred in failing to consider the supportability and consistency of any medical source opinions.

Initially, a plain review of some of the opinions rendered by Dr. Fishkin and Dr. Tetro establishes such opinions specify that Plaintiff is disabled from his "usual occupation," *see*, *e.g.*, AR at 615-616 (July 20, 2018 disability statement that "[a]s a result of the MVA related injuries, Bhola [Plaintiff][8] is unable to work and world be considered disabled *with regards to the usual occupation*." (italics and underlining added)), which, at that time, referred to Plaintiff's job as a machine operator/packaging which the VE described as work of "medium" exertion.  AR at 63.  Because the ALJ

---

[7] In the interest of completeness, the court notes that where the ALJ fails to articulate the supportability and consistency factors with regard to opinions found persuasive, such error is harmless where the record establishes application of the correct legal standard would not have changed the outcome of the disability determination. *See Scott A. v. Comm'r of Soc. Sec.*, 2022 WL 3141707, at * 5-6 (N.D.N.Y. May 3, 2022) (applying harmless error standard where the ALJ failed to articulate the supportability and consistency factors in assessing the persuasiveness of a physician's opinion where application of the correct legal standard, including the supportability and consistency factors, would not have resulted in a different conclusion).

[8] Unless otherwise indicated, bracketed material has been added.

restricted Plaintiff to a limited range of light exertion work, the opinions of Dr. Fishkin

and Dr. Tetro that Plaintiff can no longer perform work of medium exertion, *i.e.*,

Plaintiff's PRW which was of medium exertion, does not preclude Plaintiff from

performing work at the light exertion level.  Significantly, Plaintiff points to no case law in

support of this argument, and the court's research reveals none.

The remaining statements of disability as asserted by Plaintiff do not qualify as

medical opinions but, rather, are mere medical statements.  In particular,

> [a] medical opinion is a statement about what you can still do despite your
> impairment(s) and whether you have one or more impairment-related limitations
> or restrictions in the following abilities:
> * * *
>> (i) Your ability to perform physical demands of work activities, such as
>> sitting, standing, walking, lifting, carrying, pushing, pulling, or other
>> physical functions (including manipulative or postural functions, such as
>> reaching, handing, stooping, or crouching):
>> (ii) Your ability to perform mental demands of work activities . . . ;[9]
>> (iii) Yor ability to perform other demands of work, such as seeking,
>> hearing, or using other senses; and
>> (iv) Your ability to adapt to environmental conditions, such as temperature
>> extremes or fumes.

20 C.F.R. § 404.1513(a)(2)(i)-(iv).

Here, none of the statements Plaintiff identifies as a medical opinion, *see* Plaintiff's

Memorandum at 11 (referencing AR at 349-55 (Dr. Croce), 554 (Physician Assistant

James Hurd for Dr. Fishkin), 557-58 (Dr. Tetro), 586 (Dr. Tetro), 604 (unsigned), 616

(Dr. Tetro), 626 (Dr. Tetro), and 631 (Dr. Tetro)), addresses the limitations or restrictions

to Plaintiff's ability to engage in specific work-related abilities but, rather, are mere

conclusory statements that Plaintiff is disabled from working, often temporarily, with the

reason for such disability attributed to the injuries Plaintiff sustained in the January 3,

---

[9] Plaintiff does not allege disability based on any mental impairment.

2018 accident.  *See, e.g.*, AR at 561 (Dr. Tetro on July 20, 2018 attributing Plaintiff's

"orthopedic problem" and his resulting inability to work at his usual occupation to the

accident).  The determination that Plaintiff is disabled, however, is an issue specifically

reserved to the Commissioner, 20 C.F.R. § 404.1520b(c)(3)(i), such that the conclusory

statements by Plaintiff's treating sources that Plaintiff is disabled, unaccompanied by

any statement regarding what Plaintiff can do despite his impairments, and despite

being rendered by Plaintiff's treating medical sources,[10] constitute "[e]vidence that is

inherently neither valuable nor persuasive."  20 C.F.R. § 404.1520b(c)(3).  Nor is any

analysis regarding the consideration of such evidence in determining a claimant's RFC

required for such statements.  *Id*.  Accordingly, the ALJ did not err in failing to discuss

such evidence, much less the supportability and consistency of such evidence.

    Plaintiff's remaining arguments pertain to whether the ALJ's assessment of

Plaintiff's RFC is supported by substantial evidence in the record, Plaintiff's

Memorandum at 11-13, and whether the ALJ's assessment that Plaintiff's allegations of

the effects of his impairments are not entirely consistent with the medical evidence of

record.  *Id*. at 17-19.  There is no merit to these arguments; rather, the record

establishes Plaintiff gradually improved with regard to the injuries sustained in the

January 3, 2018 accident.

    In particular, the ALJ referenced medical evidence supporting the determination

that Plaintiff, despite his impairments, retains the RFC for a limited range of light work.

---

[10] The court notes that for disability benefits claims filed prior to March 27, 2017, the so-called "treating physician rule," codified at 20 C.F.R. § 404.1527(c)(2), "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000).  Here, because Plaintiff's disability benefits application was filed on June 14, 2018, the treating physician rule is inapplicable to Plaintiff's claim.

The ALJ observed Plaintiff first complained about persistent headaches and dizziness, as well as severe low back and neck pain following the January 3, 2018 accident.  AR at 21.  With regard to his low back pain, Plaintiff received chiropractic treatment from Dr. Croce from January 8, 2018 to June 13, 2018, and an MRI on February 8, 2018 revealed L5-S1 isthmic spondylolisthesis, and central disc herniation with annular tear at L4-L5.  AR at 21 (citing AR at 332).  On February 15, 2018, Plaintiff had an antalgic, slow velocity gait and had difficulty standing up from a seated position, but did not use an assistive walking device, and physical examination of Plaintiff's spine showed tenderness to the lower lumbar spine, mild loss of lumbar flexion (bending forward), but marked reduction of lumbar extension (bending backward), with pain, and seated straight leg raising was positive on the left but negative on the right.  AR at 21 (citing AR at 333).  On June 12, 2018, Plaintiff had decreased range of motion ("ROM") with pain in his cervical and lumbar spines.  AR at 444-45.  On June 20, 2018, Plaintiff reported tingling in his left leg, AR at 22 (citing AR at 436), and on September 11, 2018, Plaintiff underwent L4-S1 AP [anterior and posterior] fusion surgery performed by Dr. Fishkin.  AR at 22 (citing AR at 577-80, 595).  At a follow-up appointment with Dr. Fishkin on June 18, 2019, Plaintiff reported no improvement and Dr. Fishkin did not believe further surgery would provide any meaningful benefit and, instead, recommended long-term pain management.  AR at 22 (citing 577-80).

Nevertheless, the ALJ considered that despite continuing pain, Plaintiff's back condition improved based on normal findings on subsequent physical examinations including normal posture and gait, AR at 672 (February 8, 2021), and normal range of motion on September 22, 2020 (AR at 793).  On March 5, 2020, Dr. Wang reported

Plaintiff had a negative straight leg raising test bilaterally, AR at 811, demonstrated chronic pain syndrome and "strongly requested opioid pain killers," which request Dr. Wang denied, instead recommending non-pharmacological methods to manage pain and non-narcotic pain medication, and also encouraged Plaintiff to return to work once Plaintiff had better pain control.  AR at 812.  When Plaintiff returned to Dr. Wang on March 18, 2020, Plaintiff reported his pain was somewhat decreased, was less intense, and Plaintiff was no longer awakened by pain during the night.  AR at 813.  At that time, physical examination showed decreased active ROM of the back and occasional paresthesias (pins and needles sensation) and numbness over his legs, yet Plaintiff again had a negative straight leg raising test bilaterally, and Dr. Wang assessed Plaintiff with low back and thoracic pain, and chronic pain syndrome, but no other abnormality relative to his low back.  AR at 814.  The ALJ also considered that subsequent to his low back surgery on September 11, 2018, Plaintiff did not pursue occupational therapy, aquatic therapy, or further chiropractic treatment, and only briefly attended physical therapy and was not interested in formal physical therapy but instead preferred to walk for exercise.  AR at 23 (citing AR at 819-34).  At an annual examination on February 9, 2021, NP Lutkoff reported Plaintiff had normal posture and gait, no joint pain or muscle cramps, AR at 669-72, and on April 6, 2021, Plaintiff's spine was straight and symmetrical.  AR at 782-83.  Nor did any imaging of Plaintiff's back following his surgery reveal any objective clinical findings, including significant neurological deficits, atrophy, or spasms, nor any imaging supporting the limitations and restrictions Plaintiff reports. AR at 24.

There is also no evidence in the record suggesting that Plaintiff's left shoulder impingement or carpal tunnel syndrome status-post release surgical procedure resulted in any decreased functioning.  The ALJ noted Plaintiff, as a result of the MVA, complained of neck pain and was diagnosed with a whiplash injury, showed mildly limited range of motion of the cervical spine, and a February 8, 2018 MRI of the cervical spine showed left-sided disc herniation at C4-C5 and C6-C7, and right-sided disc herniation at C5-C6.  AR at 21 (citing AR at 309-12, 332).  Plaintiff, however, does not dispute the ALJ's conclusion that Plaintiff received only conservative treatment for his neck impairment. AR at 23.  Nor does Plaintiff dispute that, as the ALJ observed, AR at 21, Plaintiff's migraine headaches and dizziness attributed to the accident improved with nerve blocks.  AR at 21 (citing AR at 311-12).

The ALJ's conclusion that Plaintiff's shoulder impairment and carpal tunnel syndrome status-post July 2018 surgical release procedure was accommodated by limiting Plaintiff to frequent, as opposed to unlimited, capacity for overhead reaching, and handling, and no assembly-line type work, AR at 20, is also supported by the record.  Significantly, although Plaintiff first exhibited left shoulder impingement at a physical examination by Dr. Fishkin on February 15, 2018, AR at 333, the administrative record is devoid of additional shoulder complaints until February 8, 2021, when Plaintiff had mild tenderness with palpation of left anterior shoulder, limited ROM due to pain, and was unable to lift his left arm past the shoulder line, but there was no crepitus or popping, and Plaintiff had full muscle strength in all muscles with no joint swelling.  AR at 670-72.  Plaintiff was diagnosed with left shoulder pain for which the treatment plan included ROM exercises and ice application for 20 minute three times a day.  AR at

672.  One month later on March 18, 2021, Plaintiff had mild tenderness with palpation of the left anterior shoulder and limited ROM due to pain, but no swelling, redness or warmth, a review of an X-ray showed no abnormality, and Plaintiff was given steroids, advised to apply ice and do ROM exercises, and to start physical therapy if there was no improvement.  AR at 665-66.  The absence in the record of any indication that Plaintiff ever attended physical therapy for his left shoulder supports that Plaintiff did not pursue such therapy.

Regarding Plaintiff's bilateral carpal tunnel syndrome, on February 15, 2018, Plaintiff's hand grip was 5/5 bilaterally, AR at 333, but on March 21, 2018, X-rays and nerve conduction studies of Plaintiff's right and left wrists showed mild bilateral carpal tunnel syndrome which Dr. Tetro attributed to cervical radiculopathy from the herniated discs in Plaintiff's cervical spine, a condition referred to as "double crush syndrome." AR at 407-08.  On June 13, 2018, Dr. Tetro discussed carpal tunnel release, AR at 383-84, and on July 9, 2018, Plaintiff underwent the carpal tunnel release procedure.  AR at 542-44.  Following the procedure, on July 20, 2018, Plaintiff reported his carpal tunnel syndrome was "gradually improving," AR at 531 (7/20/2018), with "improvement in his neurological complaints," AR at 585-86 (December 19, 2018).  Although Plaintiff's carpal tunnel syndrome had not completely resolved as of the December 19, 2018 examination, Dr. Tetro reported Plaintiff was, at that time, "on disability regarding his *lumbar* spine."  AR at 586 (italics added).  On August 31, 2018, a nerve conduction study showed mild left median neuropathy at the wrist, and left ulnar nerve conduction within normal limits.  AR at 603.  On April 16, 2020, Dr. Wang reported Plaintiff continued to complain of some burning and tingling with pain in his hands which Dr.

19

Wang suspected was diabetic neuropathy, AR at 817, and on January 5, 2021, Dr. Borowski reported Plaintiff's mild neuropathy was improving.  AR at 785.  In short, nothing in the record supports that Plaintiff's left shoulder impairment and carpal tunnel status-post release resulted in more than a mild limitation to Plaintiff's abilities to reach overhead and perform bilateral handling and fingering as the ALJ found.

Further, the ALJ's RFC assessment is supported by Dr. Lawrence's finding upon reviewing the administrative record that Plaintiff retained the exertional capacity for light work.  AR at 102-03.  Dr. Lawrence specifically found Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry less than 10 pounds, stand and/or walk six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push and/or pull with hand and/or foot controls consistent with restrictions for lifting and carrying.  AR at 102. This finding is consistent with light work.  20 C.F.R. § 404.1567(b). Dr. Lawrence also found postural limitations that were less restrictive than those assessed by the ALJ, including that Plaintiff can frequently climb ramps and stairs whereas the ALJ limited Plaintiff to doing so only occasionally, can occasionally climb ladders, ropes, and scaffolds in contrast to the ALJ who found Plaintiff can never climb such objects, and that Plaintiff is either unlimited or could frequently stoop, kneel, crouch or crawl, all actions for which the ALJ found Plaintiff can perform only occasionally.  AR at 103; AR at 20.  The ALJ further limited Plaintiff to frequent manipulation based on his upper extremity impairments, in contrast to the Dr. Lawrence who found Plaintiff without any limitation to manipulation.  *Id*.  It is significant that the relevant regulations require ALJs consider the opinions of state agency consultants because they are highly qualified experts in Social Security disability evaluations.  20

C.F.R. §§ 404.1513a(b)(1), 404.1527(c) and (e).  Accordingly, the ALJ is permitted to

rely on the opinion of a consultative examiner provided the opinion is supported by and

consistent with other evidence in the record.  *See Camille v. Colvin*, 652 Fed.Appx. 25,

28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence).

Further, "[i]t is well-established that '[a] well-supported opinion from a consultative

examining physician, a non-examining state agency doctor, and/or a medical expert

may . . . provide substantial evidence supporting an ALJ's decision.'"  *Hairston v.

Comm'r of Soc. Sec.*, 2020 WL 516897, at *4 (W.D.N.Y. Jan. 29, 2020) (quoting

*Cassandra K. v. Comm'r of Soc. Sec.*, 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11,

2019))), *aff'd sub nom. Hairston-Scott v. Comm'r of Soc. Sec.*, 2021 WL 3777581 (2d

Cir. Aug. 26, 2021).  The ALJ's conclusion that Plaintiff's ability to perform these work-

related functions was more limited than Dr. Lawrence's assessment of Plaintiff ability to

perform such functions cannot be considered to be unsupported and thus erroneous as

Plaintiff contends.  Plaintiff's Memorandum at 17-19.

Nor did the ALJ err in finding Plaintiff's alleged symptoms are not entirely

consistent with the record.[11]  *See* AR at 21-24.  The ALJ specifically considered

Plaintiff's own report in June 2018 that he could perform personal care, sometimes

cooked rice and noodles daily, went to appointments and shopping twice a week, was

able to go outside, walk, drive a car, and ride in a car and use public transportation, and

that his wife accompanied him only in case he became ill.[12]  AR at 24 (citing AR at 248-

---

[11] Although Plaintiff refers to the ALJ's credibility finding, Plaintiff's Memorandum at 17-19, the court notes that the relevant regulations direct the ALJ to consider whether Plaintiff's alleged symptoms are consistent with the objective medical evidence in the record.  *See* 20 C.F.R. § 404.1529.

[12] Although not specifically mentioned by the ALJ, the court notes Plaintiff testified for the past five or six years he has lived in a fourth-floor walk-up apartment despite his asserted impairments including, *inter alia*, a low back injury Plaintiff maintains makes it difficult to climb stairs.  AR at 41, 55.

51).  Plaintiff could pay bills, make change, and handle a savings account, watched television daily, and went to the park once a week.  *Id*. (citing AR at 251).

Moreover, under the deferential standard of review applicable to a district court's review of an ALJ's determination of a social security disability claim, substantial evidence in the record may support two contrary rulings.  *See McIntyre v. Colvin*, 758 F.3d 146, 148 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").  Specifically, under the court's "very deferential standard of review," *Brault*, 683 F.3d at 448, the evidence in the administrative record cited by the ALJ, including treatment notes, opinions, X-rays, and MRI results, establishes "that no reasonable factfinder could [not] have reached the same conclusion," *i.e.*, that the ALJ's RFC assessment that Plaintiff, despite his impairments, was not disabled as of the date of the ALJ's decision.  *Schillo*, 31 F.4th at 78.  Accordingly, the ALJ's decision was supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.


## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 7) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED.  The Clerk of Court is directed to CLOSE the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 12, 2023
                   Buffalo, New York